1
2
3
4
5
6
7

8                        **UNITED STATES DISTRICT COURT**

9                      **EASTERN DISTRICT OF CALIFORNIA**

10

11   ROBERT GRIFFIN,                    )   Case No.: 1:11-cv-01296-JLT
                                        )
12              Petitioner,             )   ORDER DENYING FIRST AMENDED PETITION
                                        )   FOR WRIT OF HABEAS CORPUS (Doc. 13)
13        v.                            )
                                        )   ORDER DIRECTING CLERK OF COURT TO
14   JAMES A. YATES,                    )   ENTER JUDGMENT AND CLOSE FILE
                                        )
15              Respondent.             )
                                        )   ORDER DECLINING TO ISSUE CERTIFICATE
16   _____)   OF APPEALABILITY

17

18          In his petition for writ of habeas corpus, Petitioner claims a number of errors occurred that

19   justify the Court granting his petition.  In particular, he claims that the trial court erred in giving the

20   jury instructions, that he was sentenced improperly and that he received the ineffective assistance of

21   counsel in the trial court and on appeal.  Because Petitioner has failed to demonstrate his entitlement to

22   relief, the Court **DENIES** the petition.

23                        **PROCEDURAL HISTORY**

24          Petitioner is in custody of the California Department of Corrections and Rehabilitation after his

25   conviction in the Kern County Superior Court of seven counts of committing lewd and lascivious acts

26   with a child under the age of 14. (Cal. Pen. Code § 288(a). (Clerk's Transcript on Appeal ("CT"), page

27   294).  Petitioner was sentenced to a determinate prison term of 16 years.  (CT 294).

28          Petitioner filed a direct appeal to the California Court of Appeals, Fifth Appellate District and

                                           1

1    raised only whether the trial court erroneously instructed the jury.  The 5th DCA affirmed Petitioner's

2    conviction.  (Doc. 18, Ex. A).  Petitioner's petition for review in the California Supreme Court, was

3    also denied.  (Lodged Document ("LD") 13).  Also, Petitioner's state habeas petition filed in the

4    California Supreme Court was summarily denied.  (LD15)

5                                        **FACTUAL BACKGROUND**

6    The Court adopts the Statement of Facts in the 5th DCA's unpublished decision:

     L., who was 16 years old at the time of trial, began living with appellant when she was five
7    years old. When L. was eight, she was adopted by appellant and his wife, Mrs. Griffin, and
     lived with them in a household that included L.'s brother and sister.

8
     After appellant adopted L., his relationship with her changed, and he began touching her in a
9    manner that made her uncomfortable. L. estimated that this type of uncomfortable touching
     occurred more than 30 times. The first time, when L. was eight, appellant called her into the
10   back bedroom of the house and directed her to touch his penis. She complied, but did not tell
     Mrs. Griffin because she was "afraid."
11
     The second incident, also when L. was eight, occurred while she was sitting on the couch with
12   a pillow on her lap watching television. Appellant was sitting next to her and her sister was on
     the other side of her. Appellant used his hand to touch L.'s vagina over her clothing.
13
     When L. was 12 years old, appellant called her into the back bedroom and told her to touch his
14   penis. She complied. Appellant touched L.'s leg with one hand and placed his hand on his penis
     and moved it up and down. Mrs. Griffin walked in while this was going on and threatened to
15   call child protective services. She "kicked" appellant and L. out of the house. The next day,
     appellant and L. moved into a motor home.
16
     While appellant and L. lived in the motor home, appellant told L. to remove her clothing and
17   lie on the bed. He then directed her to open her legs. Appellant lay on top of her naked for
     approximately one hour. Appellant repeated this behavior more than three times while L. was
18   under the age of 14. On one occasion, appellant lay on top of her and rubbed his penis against
     her vagina. While they lived in the motor home, appellant put his mouth on her vagina, and on
19   another occasion, he told her to orally copulate him. Appellant also touched L.'s breasts while
     they were in the motor home, and he began kissing her with his tongue. She estimated that he
20   fondled her breasts five times and "tongue kissed" her three times a week.

21   After living in the motor home for approximately 10 months, appellant and L. moved back into
     the home with Mrs. Griffin. The abuse continued and, after a few months, Mrs. Griffin again
22   "kicked [them] out." Appellant and L. moved to another town.

23   When L. was 14 years old, she ran away and contacted the police department about the abuse.
     On April 9, 2007, in a pretextual telephone call to appellant, L. told appellant she was tired of
24   him touching her. Appellant said he was sorry and that he was "finished." When appellant
     asked if L. was somewhere where other people could hear her, she said she was in the
25   bathroom at a friend's and no one else could hear her. Appellant then said he had only done
     things that she said he could, like touch her leg and behind. Appellant explained that he would
26   have stopped if she had asked him to. L. asked appellant if he would stop touching her "thing."
     Appellant responded by saying "I will stop touching you at all," because she was his daughter,
27   not some "mother f-er slut" and there would be "no more tongue."

28   Later in the call when L. asked if she could stop touching his penis, appellant assured her that
     she did not have to do any of "that" anymore. He told her he loved her and missed her. L.

                                                       2

1  asked appellant if she could be pregnant because appellant rubbed his penis on her. Appellant
2  responded that she could not be pregnant because "it has to go inside of your [sic ] and I have
   to squirt." He acknowledged that "mom caught us," but claimed they weren't doing anything.
3  He also acknowledged that it was his fault, but also "a little bit" L.'s fault.

4  (Doc. 18, Exh. A).

5  **DISCUSSION**

6  I.      Jurisdiction

7          Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to

8  the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the

9  United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.

10 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States

11 Constitution. The challenged conviction arises out of the Kern County Superior Court, which is

12 located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

13         On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

14 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

15 Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v.

16 Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other*

17 *grounds by* Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after

18 statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore

19 governed by its provisions.

20 II.     Legal Standard of Review

21         A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless he

22 can show that the state court's adjudication of his claim: "(1) resulted in a decision that was contrary

23 to, or involved an unreasonable application of, clearly established Federal law, as determined by the

24 Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable

25 determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.

26 § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams v. Taylor, 529 U.S. at 412-413.

27         A state court decision is "contrary to" clearly established federal law "if it applies a rule that

28 contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts

that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams, 529 U.S. at 405-406 (2000). Consequently, a federal court may not grant habeas relief simply because the state court's decision is incorrect or erroneous; the state court's decision must also be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 511 (2003) (citing Williams v. Taylor, 529 U.S. at 409).

In Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. If fairminded jurists could so disagree, habeas relief is precluded. Harrington, 131 S.Ct. at 786. The Supreme Court has "said time and again that 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Cullen v. Pinholster, 131 S.Ct. 1388, 1410-1411 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 131 S.Ct. at 787-788.

The second prong of federal habeas review involves the "unreasonable determination" clause of 28 U.S.C. § 2254(d)(2). This prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500. A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id.; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state court decided the petitioner's claims on the merits but provided no reasoning for its decision, the

4

federal habeas court conducts "an independent review of the record...to determine whether the state court [was objectively unreasonable] in its application of controlling federal law." <u>Delgado v. Lewis</u>, 223 F.3d 976, 982 (9th Cir. 2002); <u>see</u> <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." <u>Pirtle v. Morgan</u>, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993); <u>see also</u> <u>Fry v. Pliler</u>, 551 U.S. 112, 119-120 (2007)(holding that the <u>Brecht</u> standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

Furthermore, where a habeas petition governed by the AEDPA alleges ineffective assistance of counsel under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the <u>Strickland</u> prejudice standard is applied and courts do not engage in a separate analysis applying the <u>Brecht</u> standard. <u>Avila v. Galaza</u>, 297 F.3d 911, 918 n. 7 (9th Cir. 2002); <u>Musladin v. Lamarque</u>, 555 F.3d 830, 835 (9th Cir. 2009).

III.    Review of Petitioner's Claims.

The instant petition itself alleges the following as grounds for relief: (1) the trial court violated Petitioner's constitutional rights by mis-instructing the jury (2) insufficient evidence to show that Petitioner qualified for a "one strike" sentence; and (3) ineffective assistance of trial counsel.  (Doc. 13, pp. 7-8).

A. <u>Erroneous Jury Instruction</u>.

Petitioner first contends that the trial court erred in instructing the jury regarding uncharged crimes that could be used as propensity evidence.  This contention is without merit.

1. <u>The 5th DCA's Opinion</u>.

The 5th DCA rejected Petitioner's claim as follows:

Appellant's only contention on appeal is that the trial court committed prejudicial error by instructing the jurors in the language of CALCRIM No. 1191, which concerns evidence of uncharged offenses offered as circumstantial evidence to prove predisposition.  Appellant argues that, since no evidence of uncharged offenses was presented, the instruction permitted the jury to infer criminal propensity from evidence pertaining to a charged offense (count 7) to prove the other charged offenses (counts 1–6) by a preponderance of the evidence standard, undermining the due process requirement that proof of guilt of a charge be made beyond a reasonable doubt. We find no prejudicial error.

The procedural history is as follows. Following a jury conference held off the record, the trial court read into the record the jury instructions that would be given, including a modified version of CALCRIM No. 1191.  According to the court, these were the instructions that the parties and court agreed upon.  Following closing argument, the court read the modified version of CALCRIM No. 1191 as follows:

> "The People presented evidence that [appellant] committed the crimes of between 2 and 30 separate charges [2] that were not charged in this case.  These crimes are defined for you in these instructions that I have given you. [¶]  You may consider this evidence only if the People have proved by a preponderance of the evidence that [appellant], in fact, committed the uncharged offenses. Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt.  A fact is proved by the preponderance of the evidence if you conclude that it is more likely than not that the fact is true.  [¶] If the People have not met this burden of proof, you must disregard this uncharged offense as evidence entirely.  [¶] If you decide that [appellant] committed the uncharged offenses, you may, but are not required to, conclude from that evidence that [appellant] was disposed or inclined to commit sexual offenses, and based on that decision also conclude that [appellant] was likely to commit and did commit the crimes alleged in Counts 1 through 7.  If you conclude that [appellant] committed the uncharged offenses, that conclusion is only one factor to consider along with all the other evidence.  It is not sufficient by itself to prove that [appellant] is guilty of the charged offenses.  The People must still prove each element of every charge beyond a reasonable doubt.  Do not consider this evidence for any other purpose except for the limited purpose of determining [appellant]'s disposition to commit sexual offenses."

The difficulty with appellant's argument is that he never raised it in the trial court either by objecting to the giving of CALCRIM No. 1191, or requesting a limiting instruction further clarifying the use of CALCRIM No. 1191 when applied to the facts given.

Initially, the parties disagree over whether any claim of error was forfeited by appellant's failure to object to the instruction at trial.  Where a party claims on appeal that a legally correct instruction was too general or incomplete and in need of clarification, the party must show that it requested modification, clarification or amplification in the trial court or the contention is forfeited.  (People v. Valdez (2004) 32 Cal.4th 73, 113; see also People v. Reliford (2003) 29 Cal.4th 1007, 1012 [CALJIC No. 2.50.01, which contains similar language to that in CALCRIM No. 1191, is correct statement of the law].)  In addition, the failure to object to an instruction has been held to forfeit a claim that an instruction was improperly given because it was unsupported by the evidence. (See, e.g., People v. Valdez, supra, at p. 137 [involving CALJIC No. 2.06, consciousness of guilt instruction].) But no objection is necessary to preserve a claim that an instruction violated a defendant's substantial rights. (§ 1259; People v. Kelly (2007) 42 Cal.4th 763, 791.)

Assuming without deciding that appellant has not forfeited his claim, we nonetheless reject his argument.  Appellant argues that the trial court's reference to "between 2 and 30 separate charges that were not charged in this case," referred to L.'s testimony that she had been repeatedly touched in a sexual manner from the time she was eight until she was 14.  Because the crime of continuous sexual abuse of a child, as charged in count 7, covered that same time period, appellant argues the instruction allowed the jury to use evidence of a charged offense (§ 288.5 in count 7) to prove the other charged offenses (§ 288, subd. (a) in counts 1–6) under the lesser propensity standard as stated in CALCRIM No. 1191, thereby violating his right to due process.

Appellant was charged in counts 1 through 6 with separate acts of lewd and lascivious conduct, in violation of section 288, subdivision (a). The jury was instructed that to find appellant guilty of these charges, the People had to prove that appellant willfully touched any part of a child's body or caused a child to touch her body or the defendant's body, and that the act was

committed with the intent to arouse himself or the child and the child was under the age of 14 at the time. (CALCRIM No. 1110.)  Count 7 alleged that there was continuous sexual abuse between October of 2000 and October of 2006.  Pursuant to section 288.5, subdivision (a), this charge required the People to prove appellant lived in the same household as the child, who was under the age of 14 at the time, and that he engaged in three or more acts of substantial sexual conduct or lewd or lascivious conduct with the child over at least a three-month period. (CALCRIM No. 1120.)

The prosecutor argued the following acts constituted the offenses charged in counts 1 through 6.  Count 1: The first incident, when L. was eight, occurred when appellant called her into the back bedroom of the house and directed her to touch his penis.  Count 2: The second incident, also when L. was eight, occurred while L. was sitting on the couch and appellant used his hand to touch L.'s vagina over her clothing.  Count 3: When L. was 12 years old, appellant called her into the back bedroom and told her to touch his penis.  Appellant then touched her leg and moved his hand up and down on his penis.  Count 4: While appellant and L. lived in the motor home, appellant told L. to remove her clothing and lie on the bed.  He then directed her to open her legs. Appellant lay on top of her naked for approximately one hour.  Count 5: While they lived in the motor home, appellant orally copulated L.  Count 6: Also while in the motor home, appellant told L. to place her mouth on his penis.

Aside from the specific acts testified to in counts 1 through 6, L. also testified that appellant molested her regularly, beginning when she was eight.  L. estimated that appellant touched her more than 30 times, and that after she turned 13, he touched her every day in a way that made her uncomfortable.  When L. was 13, appellant touched her breasts on at least five occasions and "tongue kissed" her three times a week.  In addition she also testified to two other occasions when appellant lay on top of her, one time while rubbing his penis against her vagina.

Because L. testified to so many acts, respondent argues the jury could have concluded that not all of the acts fell within section 288.5, leaving numerous uncharged acts for which the giving of CALCRIM No. 1191 was appropriate.  But appellant argues that, while the jury had to find appellant engaged in a minimum number of sexual acts to convict appellant, there is no way to determine which acts the jury relied upon to find appellant guilty of the continuous sexual abuse charge. As argued by appellant, "The jury could have found he committed only three acts, or they could have found he committed all the acts."  Appellant argues that, as in this case where the acts involved only one victim, requiring the jury to assess evidence of the charged offenses under two different standards posed a very real danger that the jury would be confused and apply the lower standard of proof.

Assuming arguendo that the instruction was given in error, a due process defect in using an instruction does not compel reversal in every case. "The United States Supreme Court has repeatedly held that the Chapman [v. California (1967) 386 U.S. 18, 24] test may be applied to verdicts rendered by juries instructed on mandatory presumptions violating the defendant's right to proof beyond a reasonable doubt of each element of the charged offense. [Citations.] We see no reason for different treatment of instructional error involving a permissive inference." (People v.. James (2000) 81 Cal.App.4th 1343, 1361–1362 [involving an instruction on propensity evidence of past domestic violence].) The question is whether, independently of the permissive inference, the jury actually rested its verdict on evidence establishing guilt beyond a reasonable doubt of the charged offense. "Because the inference before us [is] permissive, ... we may conclude the error did not contribute to the verdict either if the evidence is so strong that the effect of the inference from propensity alone is insignificant, or if the evidence is such that we are convinced beyond any reasonable doubt the jury did not actually draw the improper inference." (Id. at p. 1363.)

Although principally based on the testimony of one witness, L., we would still characterize the evidence of appellant's guilt of the charged crimes as overwhelming. There is nothing in the

record which causes us to doubt the credibility of L.'s testimony about any of the incidents of molestation, especially in light of the fact that appellant himself acknowledged in his telephone conversation with L. that some of those acts occurred. Moreover, appellant does not challenge on appeal the fact that there was sufficient evidence to convict him of the six lewd acts on a child or the charge of continuous sexual abuse of a child.

Nor do we think a reasonable juror would interpret the language of CALCRIM No. 1191 to authorize convictions of the charged offenses on a lowered standard of proof as suggested by appellant. While CALCRIM No. 1191 allows the jury to conclude from the uncharged conduct evidence that appellant was disposed to commit sexual offenses and, therefore, likely committed the current offenses, it nevertheless cautions the jury that it is not required to draw these conclusions and such a conclusion is insufficient alone to support a conviction. The instruction also states, "The People must still prove each element of every charge beyond a reasonable doubt." Furthermore, in this case, immediately after giving CALCRIM No. 1119, the trial court also specifically amplified the two different types of burden of proof, stating:

> "Now, one way to look at this—I want to explain this to you because it is talking about two different burdens. They have evidence that's related directly to the age of the complaining witness—12, 13 years old. We have a lot of other evidence that was admitted that covers various acts covering an entire spectrum, and it's not specifically related to the ages that are alleged in Counts 1 through 6 or in Count 7. Those are the uncharged offenses that we are not talking about. As to them, the prosecution has the burden to prove by a preponderance of the evidence that those allegations actually were committed by [appellant]. And a preponderance of the evidence means, basically, it is more likely than not true that it occurred. In other words, did the witness basically convince you? That's quite a bit different than guilty beyond a reasonable doubt. [¶] The prosecution has to prove, in the other acts, in order to find [appellant] guilty, beyond a reasonable doubt, and I defined that. And it's back in the definition. It talks about the abiding conviction. [¶] There [are] two different proofs, but you can use these uncharged crimes for only a unlimited [Footnote 3[1]] purpose, only for the purpose of determining whether or not [appellant] was predisposed to commit sexual offenses."

In addition, the court specifically instructed the jury, pursuant to CALCRIM No. 220, that "[a] defendant in a criminal case is presumed to be innocent" and that "[u]nless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal...." The jury was also instructed to consider the instructions as a whole and cautioned that "[s]ome of the [ ] instructions may not apply, depending on your findings about the facts of the case."(CALCRIM No. 200.)

We conclude any error in instructing the jury did not influence the verdicts and, therefore, was harmless beyond a reasonable doubt.

(Doc. 18 at 20)

      2. <u>Federal Standard</u>.

      The Due Process Clause of the Fourteenth Amendment requires the prosecution to prove every element of a charged offense beyond a reasonable doubt. <u>See In re Winship</u>, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). If the jury is not properly instructed that a defendant is presumed

---

[1] In this footnote, the 5th DCA noted that Respondent contends that the word "unlimited" was a typographical error and the word should have been "limited."  (Doc. 18 at 20 n. 3)

8

1 | innocent until proven guilty beyond a reasonable doubt, then the defendant has been deprived of due
2 | process. See Middleton v. McNeil, 541 U.S. 433, 436, 124 S.Ct. 1830, 158 L.Ed.2d 701 (2004). Any
3 | jury instruction that "reduce[s] the level of proof necessary for the Government to carry its burden ... is
4 | plainly inconsistent with the constitutionally rooted presumption of innocence." Cool v. United States,
5 | 409 U.S. 100, 104, 93 S.Ct. 354, 34 L.Ed.2d 335 (1972).

6 |     3.  Analysis.

7 |     CALCRIM No. 1191 tells the jury how to consider evidence of uncharged sexual offenses,
8 | including that the truth of the offenses must be proven by a preponderance of the evidence. Petitioner's
9 | contention is not unique. Various versions of this instruction, and the burden of proof, have been
10 | challenged many times. However, this contention has been rejected by the California Supreme Court in
11 | People v. Reliford, 29 Cal.4th 1007, 1013 (2003). Since the issue addressed by Reliford is one of state
12 | law, this Court is bound by that decision.

13 |     a. Procedural Default

14 |     At the outset, the Court notes that the state court concluded that Petitioner had procedurally
15 | defaulted his claim concerning the uncharged sexual offenses because Petitioner did not
16 | contemporaneously object to the evidence at trial.

17 |     A federal court will not review a petitioner's claims if the state court has denied relief of those
18 | claims pursuant to a state law that is independent of federal law and adequate to support the judgment.
19 | Ylst, 501 U.S. at 801; Coleman v. Thompson, 501 U.S. 722, 729–30, 111 S.Ct. 2546, 115 L.Ed.2d 640
20 | (1989). A state court's refusal to hear the merits of a claim because of petitioner's failure to follow a
21 | state procedural rule is considered a denial of relief on independent and adequate state grounds. Harris
22 | v. Reed, 489 U.S. 255, 260–61, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). This doctrine of procedural
23 | default is based on the concerns of comity and federalism. Coleman, 501 U.S. at 730–32.

24 |     There are limitations as to when a federal court should invoke procedural default and refuse to
25 | evaluate the merits of a claim because the petitioner violated a state's procedural rules. Procedural
26 | default can only block a claim in federal court if the state court "clearly and expressly states that its
27 | judgment rests on a state procedural bar." Harris, 489 U.S. at 263. For California Supreme Court
28 | decisions, this means the Court must specifically have stated that it denied relief on a procedural

ground. Ylst, 501 U.S. at 803; Acosta–Huerta v. Estelle, 7 F.3d 139, 142 (9th Cir.1993); Hunter v. Aispuro, 982 F.2d 344, 347–48 (9th Cir.1991). If the California Supreme Court denies a petitioner's claims without any comment or citation, the federal court must consider that it is a decision on the merits. Hunter, 982 F.2d at 347–48.

In addition, a federal court may only impose a procedural bar on claims if the procedural rule that the state used to deny relief is "firmly established and regularly followed." O'Dell v. Thompson, 502 U.S. 995, 998 (1991); Ford v. Georgia, 498 U.S. 411, 423–24 (1991); James v. Kentucky, 466 U.S. 341, 348–51 (1984). The state procedural rule used must be clear, consistently applied, and well-established at the time of the petitioner's purported default. Fields v. Calderon, 125 F.3d 757, 760 (9th Cir.1997); Calderon v. United States Dist. Court (Bean ), 96 F.3d 112, 129 (9th Cir.1996).

In this case, the appellate court rejected the claim in accordance with California's contemporaneous objection rule because the defense failed to object to the evidence at the time it was presented. In Wainwright v. Sykes, 433 U.S. 72, 87-88 (1977), the United States Supreme Court held that if state procedure requires contemporaneous objections to preserve an issue for appellate review, the failure to interpose a contemporaneous objection bars federal habeas review under the doctrine of independent and adequate state procedural grounds.  The Ninth Circuit has noted that California's contemporaneous objection rule is consistently applied independent of federal law. Melendez v. Pliler, 288 F.3d 1120, 1125 (9th Cir.2002); Vansickel v. White, 166 F.3d 953, 957 (9th Cir.1999).

If the court finds an independent and adequate state procedural ground, "federal habeas review is barred unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice." Noltie v. Peterson, 9 F.3d 802, 804–805 (9th Cir.1993); Coleman, 501 U.S. at 750. In this case, Petitioner has not shown that any external factor prevented defense counsel from objecting.

Petitioner has also failed to demonstrate that a fundamental miscarriage of justice will occur if the claim is barred from federal review. The miscarriage of justice inquiry is governed by the standard set forth in Murray v. Carrier, 477 U.S. 478 (1986). Murray requires a habeas petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Id. at 496. To satisfy Murray's "actual innocence" standard, a petitioner must show that, in light of new

1   evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a

2   reasonable doubt. Id. Here, Petitioner makes no such showing of actual innocence. Indeed, at several

3   points in the Traverse, Petitioner's concedes that he committed many of the acts charged and that doing

4   so was a mistake. (Doc. 19, pp. 5-6). Accordingly, Petitioner is procedurally barred from bringing this

5   claim. However, even were the foregoing not true, Petitioner's claim is without merit.

6         b. Merits

7         The admissibility of evidence is generally an issue of state law which does not warrant habeas

8   relief. Estelle, 502 U.S. at 67. "The issue for us, always, is whether the state proceedings satisfied due

9   process; the presence or absence of a state law violation is largely beside the point." Jammal v. Van de

10  Kamp, 926 F.2d 918, 919–20 (9th Cir.1991). "The admission of evidence does not provide a basis for

11  habeas relief unless it rendered the trial fundamentally unfair in violation of due process." Johnson v.

12  Sublett, 63 F.3d 926, 930 (9th Cir.1995) (citing Estelle, 502 U.S. at 67–68).

13        Currently, there is no Supreme Court precedent governing a state court's discretionary decision

14  to admit evidence as a violation of due process. In Holley v. Yarborough, 568 F.3d 1091, 1101 (9th

15  Cir.2009), the Ninth Circuit stated:

16        The Supreme Court has made very few rulings regarding the admission of evidence as a

17  violation of due process. Although the Court has been clear that a writ should be issued when
    constitutional errors have rendered the trial fundamentally unfair, see Williams, 529 U.S. at

18  375, 120 S.Ct. 1495, 146 L.Ed.2d 389, it has not yet made a clear ruling that admission of
    irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to

19  warrant issuance of the writ. Absent such "clearly established Federal law," we cannot
    conclude that the state court's ruling was an "unreasonable application." Musladin, 549 U.S. at

20  77, 127 S.Ct. 649, 166 L.Ed.2d 482. Under the strict standards of AEDPA, we are therefore
    without power to issue the writ ....

21  Given that there is no governing Supreme Court precedent, Petitioner cannot demonstrate that the state

22  court denial of his claim was contrary to or involved an unreasonable application of "clearly

23  established" Supreme Court precedent. Thus, this claim must be rejected.

24        With respect to Petitioner's claim concerning CALCRIM No. 1191, Petitioner fails to

25  demonstrate that the instruction violated his due process rights by lessening the prosecution's burden of

26  proof. The Supreme Court has held that the fact that an instruction was allegedly incorrect under state

27  law is not a basis for habeas relief. Estelle v. McGuire, 502 U.S. 62, 71, 112 S.Ct. 475, 116 L.Ed.2d

28  385 (1991) (citing Marshall v. Lonberger, 459 U.S. 422, 438, n. 6, 103 S.Ct. 843, 74 L.Ed.2d 646

(1983)) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules"). Federal habeas courts therefore do not grant relief simply because an instruction may have been deficient. Estelle, 502 U.S. at 72. The only question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Cupp v. Naughten, 414 U.S. 141, 147 (1973); see also Estelle, 502 U.S. at 72; Henderson v. Kibbe, 431 U.S. 145, 154 (1977); Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) (" '[I]t must be established not merely that the instruction is undesirable, erroneous, or even "universally condemned," but that it violated some [constitutional right]' "). "It is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." Estelle, 502 U.S. at 72 (quoting Cupp at 147). In addition, juries are presumed to have followed their instructions. Weeks v. Angelone, 528 U.S. 225, 234, 120 S.Ct. 727, 145 L.Ed.2d 727 (2000). And in reviewing the instruction, the court must inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. Boyde v. California, 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990). Even if constitutional instructional error has occurred, the federal court must still determine whether Petitioner's suffered actual prejudice, that is, whether the error "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).

In Gibson v. Ortiz, 387 F.3d 812 (9th Cir. 2004), overruled on other grounds by Byrd v. Lewis, 566 F.3d 855, 866 (9th Cir. 2009), the Ninth Circuit found a 1996 California jury instruction which provided for the admission of propensity evidence in sexual assault cases was unconstitutional because it allowed the jury to convict the defendant without proof beyond a reasonable doubt. Id., 387 F.3d at 822. The court held the two instructions together, CALJIC No. 2.50.01 and CALJIC No. 2.50.1, allowed for the jury to find by a preponderance of the evidence that the defendant committed the prior uncharged offense, allowed the jury to infer a predilection for sexual offenses from the prior offense, and then infer guilt on the charged offense based on that predilection. Id. The court found that the instructions, by allowing the jury to infer guilt based only on evidence proven by a mere preponderance, violated the Winship "maxim that a defendant may not be convicted except 'upon proof

beyond a reasonable doubt of every fact necessary to constitute the crime.'" Id. at 822 (citing Winship, 397 U.S. at 364).

The model jury instructions were amended in 1999 to state that a finding that the defendant committed the prior offense by a preponderance of the evidence was not sufficient by itself to prove beyond a reasonable doubt that the defendant committed the charged offenses. CALJIC No. 2.50.01 (7th ed.1999). The instructions were further amended in 2002 to clarify that any inference the jury draws from the propensity evidence is but one item to be considered among all the evidence in determining guilt beyond a reasonable doubt. CALJIC No. 2.50.01 (8th ed.2002). The California Supreme Court upheld the 2002 version of the instructions, finding the language to be constitutional. People v. Reliford, 29 Cal.4th 1007, 1016, 130 Cal.Rptr.2d 254, 62 P.3d 601 (2003) (holding that the 2002 instructions did not allow the jury to rely on propensity evidence proven by a preponderance standard to convict on the charged offenses).

The language in CALCRIM No. 1191, as given here, includes all of the revisions made in 1999 and 2002 and does not suffer from the defects highlighted in Gibson. People v. Schnabel, 150 Cal.App.4th 83, 87 (2007) (citing Reliford, 29 Cal.4th at 1012–16, 130 Cal.Rptr.2d 254, 62 P.3d 601). Moreover, the Ninth Circuit has held that the 5th DCA did not act contrary to federal law in upholding the 2002 version of CALJIC No. 2.50.01.  Schultz v. Tilton, 659 F.3d 941, 945 (9th Cir.2011). The Ninth Circuit stated that "the 2002 version of CALJIC No. 2.50.01 in no way suggests that a jury could reasonably convict a defendant for charged offenses based merely on a preponderance of the evidence." Id. It found that "the instruction given ... was unambiguous and made clear that [the defendant] could be convicted only if the evidence as a whole 'proved [him] guilty beyond a reasonable doubt of the charged crime.'" Id. CALCRIM No. 1191 is a restatement of CA LJIC No. 2.50.01. In the same way, CALCRIM No. 1191 does not suggest that a defendant can be convicted based upon a preponderance of the evidence; rather, it clearly requires that the jury must find each element of every charge beyond a reasonable doubt.

Thus, the state trial court's instructions to the jury in this case did not allow the jury to find that petitioner committed lewd and lascivious acts with a person under the age of fourteen by a preponderance of the evidence, and then infer that he committed the charged offenses based solely

upon the prior incidents, as was the case in <u>Gibson</u>. <u>Gibson</u>, 387 F.3d at 822.  Instead, in this case the trial court informed the jury of the requirement that a conclusion that the petitioner committed the prior rape "is only one factor to consider along with all the other evidence." (CT at 264.) The court instructed the jury that this propensity evidence was not sufficient by itself to prove petitioner was guilty of the charged offenses. (<u>Id</u>.) The jury was instructed that the "People must still prove each element of every charge beyond a reasonable doubt." (<u>Id</u>.) Finally, the court limited the jury's use of this evidence to impeachment: "Do not consider this evidence for any other purpose except for the limited purpose of determining [petitioner's] credibility." (<u>Id</u>.) The jury was separately instructed that "the People must prove a defendant guilty beyond a reasonable doubt," and that [w]henever [the judge] tell[s] you the People must prove something, [the judge] mean[s] they must prove it beyond a reasonable doubt, unless [the just] specifically tell[s] you otherwise."  (CT 245.)  The jury is presumed to have followed its instructions. <u>See Weeks v. Angelone</u>, 528 U.S. 225, 226 (2000).

The trial court's instructions in this case reasonably comported with the due process requirement that the government prove every fact necessary to convict petitioner beyond a reasonable doubt, satisfying <u>Winship</u>.  Therefore, Petitioner fails to show that the trial court's instructions to the jury relating to the propensity evidence were contrary to, or an unreasonable application of, clearly established federal law. Accordingly, this claim for relief will be denied.

B.  <u>Legality of the Sentence</u>.

Petitioner next contends that insufficient evidence was presented to support a "one strike" sentence and that, pursuant to Cal. Pen. Code § 12033.066, he was entitled to be considered for probation rather than limited to serving a prison sentence.  This contention is also without merit.

1.  <u>The State Court Decision</u>.

Petitioner did not present this issue in his direct appeal.  Rather, he raised it in a habeas petition to the California Supreme Court, which rejected the claim with citations to <u>People v. Duvall</u>, 9 Cal. 4th 464, 474 (1995), <u>In re Waltreus</u>, 62 Cal.2d 218, 225 (1965), <u>In re Dixon</u>, 41 Cal.2d 755, 759 (1953), and <u>In re Swain</u>, 34 Cal.2d 300, 304 (1949).  (LD 15).

2.  <u>Federal Standard</u>.

As discussed previously, when a state court decision on a petitioner's claims rejects some

14

claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, ––– U.S. ––––, –––, 133 S.Ct. 1088, 1091, 185 L.Ed.2d 105 (2013).  Moreover, where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2011); Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.2003); Greene v. Lambert, 288 F.3d 1081, 1089 (9th Cir.2002); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Harrington, 131 S.Ct. at 784.

Here, the California Supreme Court considered and rejected Petitioner's claim regarding probation with citations to various state court decisions, effectively constituting a procedural bar to further review.  Under such circumstances, the state court's decision is considered to be a decision on the merits which does not include reasoning to support its conclusion, thus requiring this Court to conduct an independent review of the claim.

        3.  Analysis.

Petitioner's contends that because the victim was not living with him, California Penal Code § 12033.066 did not preclude him from being sentenced to probation rather than prison.  (Doc. 13, p. 15).  Even if Petitioner's interpretation of the statute is correct, the ultimate issue is whether the trial court violated Petitioner's constitutional rights in sentencing him to prison.  For the reasons expressed below, the Court finds no constitutional violation.

        a.  State Law Claim

To the extent Petitioner contends the appellate court misinterpreted California law, specifically § 12033.066, in passing sentence, such claim is not cognizable by way of § 2254.  A determination of state law by a state appellate court is binding in a federal habeas action, Hicks v. Feiock, 485 U.S. 624,

629 (1988), unless the interpretation is an "obvious subterfuge to evade consideration of a federal issue." Mullaney v. Wilbur, 421 U.S. 684, 691 n. 11 (1975); Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (federal habeas court must respect a state court's application of its own law and must not engage in de novo review). A federal court has no basis for disputing a state's interpretation of its own law. Clemons v. Mississippi, 494 U.S. 738, 739–740 (1990). Here, the sentencing hearing reflects that the issue of probation was rejected pursuant to California law and that no federal constitutional issues were raised or implicated. Accordingly, the issue fails to state a cognizable federal habeas claim.

### b.  Procedural Bar

State courts may decline to review a claim based on a procedural default. Wainwright v. Sykes, 433 U.S. 72, 86–87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991); LaCrosse v. Kernan, 244 F.3d 702, 704 (9th Cir. 2001). In this event, "federal habeas review is barred unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice." Noltie v. Peterson, 9 F.3d 802, 804-805 (9th Cir. 1993); Coleman, 501 U.S. at 750; Park v. California, 202 F.3d 1146, 1150 (9th Cir. 2000).

"For a state procedural rule to be 'independent,' the state law basis for the decision must not be interwoven with federal law." LaCrosse v. Kernan, 244 F.3d 702, 704 (9th Cir. 2001) (citing Michigan v. Long, 463 U.S. 1032, 1040-41 (1983)); Morales v. Calderon, 85 F.3d 1387, 1393 (9th Cir. 1996). "A state law is so interwoven if 'the state has made application of the procedural bar depend on an antecedent ruling on federal law [such as] the determination of whether federal constitutional error has been committed.'" Park, 202 F.3d at 1152 (quoting Ake v. Oklahoma, 470 U.S. 68, 75, 105 S.Ct. 1087 (1985)).

To be deemed adequate, the state law ground for decision must be well-established and consistently applied. Poland v. Stewart, 169 F.3d 573, 577 (9th Cir. 1999). Although a state court's exercise of judicial discretion will not necessarily render a rule inadequate, the discretion must entail "'the exercise of judgment according to standards that, at least over time, can become known and

understood within reasonable operating limits.'"  Id. at 377 (quoting Morales, 85 F.3d at 1392).

In re Dixon refers to California's procedural rule which provides that a California court, in a habeas corpus proceeding, will not review the merits of a claim if that claim could have been raised in a timely appeal but was not.  In re Dixon, 41 Cal.2d at 759.  Despite the petitioner's failure to bring a claim on direct appeal from a conviction, a California court will hear the merits of case if the court finds one of four exceptions. The four exceptions to the Dixon bar are: 1) fundamental constitutional error; 2) a lack of fundamental jurisdiction by the trial court over the petitioner; 3) the trial court's acting in excess of jurisdiction; and 4) an intervening change in the law.  Fields, 125 F.3d at 763, quoting, In re Harris, 5 Cal.4th 813 at 828-842 (1993).

Since the California Supreme Court's 1998 decision in In re Robbins, 18 Cal.4th 770, 811-812 & n. 32 (1998), the Dixon rule has been deemed to be independent of federal law.  Park v. California, 202 F.3d 1146, 1152 (2000).  Since the California Supreme Court's 1993 decisions in In re Harris, 5 Cal.4th 813, 823 (1993) and In re Clark, 5 Cal.4th 750 (1993), the Dixon rule has been consistently applied, i.e., "adequate." Park, 202 F.3d at 1152. Hence, any state court ruling procedurally barring a habeas claim because the petition failed to raise that claim in his direct appeal, i.e., the Dixon rule, will be barred on federal habeas review.

Under California law, a citation to People v. Duvall, 9 Cal.4th 464, 474 (1995), indicates that a petitioner has failed to state his claim with sufficient particularity for the state court to examine the merits of the claim, and/or has failed to "include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations." Duvall, 9 Cal.4th at 474.  Like Duvall, a citation to Swain stands for the proposition that a petitioner has failed to state his claim with sufficient particularity.  In Kim v. Villalobos, 799 F.2d 1317, 1319 (9th Cir. 1986), the Ninth Circuit found that the Swain citation indicated that the claims were unexhausted because their pleadings defects, i.e., lack of particularity could be cured in a renewed petition.  Kim, 799 F.2d at 1319.

However, in Kim, the Ninth Circuit also stated that it was "incumbent" on the district court, in determining whether the federal standard of "fair presentation" of a claim to the state courts had been met, to independently examine Kim's petition to the California Supreme Court.  Id. at 1320.  "The mere

recitation of <u>In re Swain</u> does not preclude such review." <u>Id</u>.  Indeed, the Ninth Circuit has held that

where a prisoner proceeding pro se is unable to meet the state rule that his claims be pleaded with

particularity, he may be excused from complying with it.  <u>Harmon v. Ryan</u>, 959 F.2d 1457, 1462 (9th

Cir. 1992)(citing <u>Kim</u>, 799 F.2d at 1321).  "Fair presentation" requires only that the claims be pleaded

with as much particularity as is practicable.  <u>Kim</u>, 799 F.2d at 1320.

Here, the California Supreme Court denied Petitioner's claim on habeas review, citing <u>In re</u>

<u>Waltreus</u>, 62 Cal.2d 218 (1965).  <u>Waltreus</u> provides that "any issue that was actually raised and rejected

on appeal cannot be renewed in a petition for a writ of habeas corpus," <u>Forrest v. Vasquez</u>, 75 F.3d 562,

563 (9th Cir.1996) (internal quotation marks and citation omitted), results in a procedural default thus

barring this Court from reaching the merits of this claim. <u>Whitley</u>, 505 U.S. at 338. However, the Ninth

Circuit has stated that a denial under <u>Waltreus</u> "is neither a ruling of procedural default nor a ruling on

the merits," but rather "merely bars relitigation in state habeas proceedings of claims already litigated

on direct appeal." <u>Carter v. Giurbino</u>, 385 F.3d 1194, 1198 (9th Cir. 2004). Thus, where Respondent

asserts that a petition brought by a California state prisoner is procedurally barred by a citation to

<u>Waltreus</u>, a court must 'look through' that citation to the last reasoned state court decision in order to

determinate whether the citation to <u>Waltreus</u> was based on an earlier procedural bar." <u>Id</u>. (citing <u>Ylst</u>,

501 U.S. at 805–806).

In short, the state supreme court's citation to <u>Dixon</u>, an independent and adequate state

procedural bar, precludes review of this issue.  It is unnecessary, therefore, to conduct a review of

Petitioner's state supreme court petition, pursuant to <u>Kim v. Villalobos</u>, in order to determine whether

the claim was so vague and lacking in specific details that an amended petition with further clarifying

details was warranted.

c. <u>Merits</u>.

Even if the merits were considered, Petitioner would still lose on this claim.  First, neither the

probation report nor the transcript of the sentencing hearings indicate that anyone had taken the position

that § 1203.066 expressly excluded Petitioner from being considered for probation.  To the contrary,

the probation report clearly indicates that probation was indeed an option available to the sentencing

judge, but not one that the probation officer recommended.  (LD 2).  Moreover, at sentencing, neither

1   attorney nor the judge ever mentioned probation as a possible sentence or raised the prospect that §

2   1203.066 prohibited probation.  Instead, it appears the court determined the gravity of the offenses

3   required that some term of imprisonment was warranted.  The prosecution requested, and the court

4   imposed, a sentence to the upper term based on the aggravating factor that Petitioner was in a position

5   of trust with the victim, the absence of any circumstances in mitigation, and the severity and number of

6   offenses.  (LD 8, p. 709).  Given the court imposed the upper term, it seems highly improbable that the

7   trial judge would have been inclined toward a sentence of mere probation.

8          Finally, contrary to Petitioner's assertions, the statute itself precludes probation in this case.

9   Under the plain language of the statute, "A person who, in violating Section 288 or 288.5, has

10  *substantial sexual conduct* with a victim who is under 14 years of age" is precluded from probation.  §

11  12033.066(a)(8).(Emphasis suppled).  Section 12033.066(b) defines "substantial sexual conduct" to

12  mean "penetration of the vagina or rectum of either the victim or the offender by the penis of the other

13  or by any foreign object, *oral copulation*, or *masturbation of either the victim or the offender*."

14  (Emphasis supplied). Evidence presented at trial included that Petitioner engaged in oral copulation

15  with the victim and that he also placed the victim's hand on his penis in a manner consistent with

16  masturbation.  Under such circumstances, the statute forecloses a sentence to probation.[2]

17         C.  Ineffective Assistance of Counsel.

18         Finally, Petitioner claims that he was denied his Sixth amendment right to the effective

19  assistance of counsel.  This contention too is without merit.

20             1.  The State Court Ruling.

21         Like the previous issue, this issue was raised in Petitioner's state habeas petition in the

22  California Supreme Court.  Also like the previous claim, the issue was rejected with citations to Duvall,

23  Swain, Waltreus, and Dixon.  Accordingly, the Court will apply the independent review standard in

24  assessing this claim.

25  ///

26

27  [2] It bears emphasis that Petitioner is not contending that his 16-year sentence to the aggravated upper term is unwarranted
    or in violation of the federal constitution.  Instead, he argues that he should not have been excluded from consideration for

28  parole.  As discussed above, the statute appears to foreclose probation; however, there is no indication in the record that the
    court or counsel ever argued or considered that he was legally excluded from parole.

1    2.  Federal Standard.

2    Effective assistance of counsel is guaranteed by the Due Process Clause of the Fourteenth

3   Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of counsel

4   are reviewed according to Strickland 's two-pronged test. Miller v. Keeney, 882 F.2d 1428, 1433 (9th

5   Cir.1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986); see also Penson v. Ohio, 488 U.S.

6   75(1988) (holding that where a defendant has been actually or constructively denied the assistance of

7   appellate counsel altogether, the Strickland standard does not apply and prejudice is presumed; the

8   implication is that Strickland does apply where counsel is present but ineffective).

9    To prevail, Petitioner must show two things. First, he must establish that counsel's deficient

10   performance fell below an objective standard of reasonableness under prevailing professional norms.

11   Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052 (1984). Second, Petitioner must

12   establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's

13   unprofessional errors, he would have prevailed. Id. at 694. A "reasonable probability" is a probability

14   sufficient to undermine confidence in the outcome. Id. The relevant inquiry is not what counsel could

15   have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151

16   F.3d 1170, 1173 (9th Cir.1998).

17    With the passage of the AEDPA, habeas relief may only be granted if the state-court decision

18   unreasonably applied this general Strickland standard for ineffective assistance.  Knowles v.

19   Mirzayance, 556 U.S. ___, 129 S.Ct. 1411, 1419 (2009).  Accordingly, the question "is not whether a

20   federal court believes the state court's determination under the Strickland standard "was incorrect but

21   whether that determination was unreasonable–a substantially higher threshold."  Schriro v. Landrigan,

22   550 U.S. 465, 473 (2007); Knowles v. Mirzayance, 556 U.S. ___, 129 S.Ct. at 1420.  In effect, the

23   AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state

24   court determination was erroneous, but also that it was objectively unreasonable.  Yarborough v.

25   Gentry, 540 U.S. 1, 5 (2003). Moreover, because the Strickland standard is a general standard, a state

26   court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

27   See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)("[E]valuating whether a rule application was

28   unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway

1  courts have in reaching outcomes in case-by-case determinations").

2          3.  Analysis.

3             a.  Procedural Default.

4         As in the previous claim, the state supreme court's rejection of this claim on state procedural

5  grounds, pursuant to Dixon, bars further review by this Court.  However, even if that were not the case,

6  the issue is without merit.

7             b.  Merits.

8         Respondent contends that Petitioner's state petition in the California Supreme Court is so

9  replete with "utterly conclusory and non-specific assertions" that "it will be clear that at least some

10  fairminded jurist could fine that, if Petitioner's casual and vague statements therein (referencing non-

11  specific "important motions" and claiming counsel "continued to blunder" with no supporting facts)

12  could surmount Strickland's bar, then that bar would be not "high," and the "task" would be an "easy

13  one indeed."  (Doc. 18, p. 14).   Although Respondent's failure to actually present any sort of legal

14  analysis of Petitioner's claim is both unhelpful and disappointing, the Court nevertheless agrees with

15  Respondent's ultimate conclusion.

16         As Respondent correctly observes, the state petition contains only vague allegations and non-

17  specific assertions.  For example, Petitioner contends that counsel "failed to make important motions

18  during trial, overlooking critical and crucial motions."  (LD 15).  However, nowhere does Petitioner

19  identify these "critical and crucial motions" that defense counsel failed to make during trial. Without

20  knowing to which specific motions Petitioner refers, there is no basis upon which this Court might

21  review Petitioner's claim of ineffectiveness.

22          Petitioner also contends that trial counsel "made no effort to accommodate" Petitioner's

23  medical infirmities, including a hearing disorder and a severe speech impediment.  (LD 15).  However,

24  there is nothing in the record, and Petitioner has provided no additional evidence, to establish the

25  existence of these infirmities, or that, without accommodation, those infirmities would impair the

26  attorney-client relationship, or that his attorney acted had the ability to accommodate such disabilities,

27  or, most importantly, that his attorney's failure to accommodate those disabilities fell below the

28  standard of a reasonable attorney.

Finally, Petitioner maintains that his attorney told him that he "could not win" at trial.  (LD 15). While such an assessment may be difficult for a defendant to hear at the outset of his criminal trial, it is certainly within defense counsel's purview, and indeed some would say it was obligatory, to be entirely candid with a client in order to prevent unrealistic expectations about the trial's outcome on the part of his client.  In either event, such a generalized assertion certainly falls far short of meeting <u>Strickland</u>'s high standard.

Petitioner also contends that appellate counsel was ineffective for failing to raise on appeal the issue of trial counsel's ineffectiveness.  (LD 15).  In challenges to the effective assistance of appellate counsel, the same standards apply as with the claims of ineffective assistance of trial counsel.  <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000); <u>Smith v. Murray</u>, 477 U.S. 527 (1986).   In <u>Smith</u>, the United States Supreme Court indicated that an appellate attorney filing a merits brief need not and should not raise every non-frivolous claim.  <u>Robbins</u>, 528 U.S. at 288.  Rather, an attorney may select from among them in order to maximize the likelihood of success on appeal.  <u>Id</u>.  As a result, there is no requirement that an appellate attorney raise issues that are clearly untenable.  <u>Gustave v. United States</u>, 627 F.2d 901, 906 (9th Cir. 1980); <u>see also Gillhan v. Rodriguez</u>, 551 F.2d 1182 (10th Cir. 1977).

As this Court has previously concluded that Petitioner's claims regarding trial counsel's performance were not sufficiently pleaded or proved to meet the <u>Strickland</u> standard, it is patent that no legitimate basis exists for a claim of ineffective assistance on the part of appellate counsel for failing to raise such vague theories on direct appeal.  <u>Featherstone v. Estelle</u>, 948 F.2d 1497, 1507 (9th Cir. 1991). Accordingly, Petitioner's contentions that both trial and appellate counsel were ineffective must be rejected.

Moreover, the Court declines to issue a certificate of appealability.  A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances.  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-336 (2003).   The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

(b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court;  or

(B) the final order in a proceeding under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denied a petitioner's petition, the court may only issue a certificate of appealability when a petitioner makes a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  To make a substantial showing, the petitioner must establish that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further'."  Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In the present case, the Court finds that Petitioner has not made the required substantial showing of the denial of a constitutional right to justify the issuance of a certificate of appealability.  Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further.  Thus, the Court DECLINES to issue a certificate of appealability.

## ORDER

For the foregoing reasons, the Court HEREBY ORDERS as follows:

1. The first amended petition for writ of habeas corpus (Doc. 13), is DENIED with prejudice;

2. The Clerk of the Court is DIRECTED to enter judgment and close the matter;

///

///

///

23

3.  The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   **October 15, 2014**          **/s/ Jennifer L. Thurston**
                                        UNITED STATES MAGISTRATE JUDGE